UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AVIS D. SNEAD,

   Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

18-CV-1029
DECISION & ORDER

On September 18, 2018, the plaintiff, Avis D. Snead, brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On June 4, 2019, Snead moved for judgment on the pleadings, Docket Item 6; on September 30, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on October 21, 2019, Snead replied, Docket Item 15.

For the reasons stated below, this Court grants Snead's motion and denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Snead argues that the ALJ erred in failing to properly weigh the opinion of Snead's treating physician, Jiyeon Jung, M.D., and in substituting the ALJ's lay judgment for that of a medical expert. Docket Item 6-1 at 1. Snead further argues that the ALJ erred in failing to identify and resolve a conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"). *Id.* This Court agrees that the ALJ erred prejudicially and therefore remands to the Commissioner for reevaluation of Dr. Jung's opinion and, if necessary, solicitation of an additional medical opinion on Snead's residual functional capacity ("RFC").

## II. ANALYSIS

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are most able to "provide a detailed, longitudinal picture of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 Fed. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." § 404.1527(c)(2).

Here, the ALJ purported to give "great weight" to the opinion of Dr. Jung, *see* Docket Item 5 at 28, an internist who treated Snead from July 2016 to April 2017, *see id.* at 351-68, 452. More specifically, Dr. Jung opined in February 2017 that Snead was "moderately limited" in walking, standing, and using her hands and "very limited" in sitting, lifting, carrying, pushing, pulling, bending, and climbing stairs. *Id.* at 452. Snead's limitations stemmed from longstanding back problems that necessitated spinal fusion surgery in 2013. *See id.* at 24, 26. Dr. Jung noted that she[2] had been treating Snead for more than six months and predicted that the limitations she described would last for "7-11 months." *Id.* at 452.

---

[2] Dr. Jung's gender is not clear from the record, but Snead's brief suggests that Dr. Jung is female. *See* Docket Item 6-1 at 7.

3

The ALJ found that Snead had the RFC

> to perform light work . . . except that [Snead] can
> occasionally operate hand controls with the bilateral hands.
> [Snead] can frequently reach overhead bilaterally and for all
> other reaching, can reach frequently bilaterally. [Snead] can
> frequently handle, finger[,] and feel items with the bilateral
> upper extremities. [She] can occasionally climb ramps and
> stairs, ladders, ropes[,] or scaffolds. [She] can occasionally
> balance, stoop, kneel, crouch[,] and crawl.

*Id.* at 23. But it is not at all clear how this RFC accords "great weight" to Dr. Jung's opinion.

As an initial matter, "light work" generally requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" and "[s]itting . . . intermittently during the remaining time," SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983); alternatively, "[a] job is . . . in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work," *id.* at *5. It is hard to see how Snead could perform such work if she is "moderately limited" in walking and standing and "very limited" in sitting, as Dr. Jung opined. Moreover, the ALJ's conclusion that Snead could "frequently handle, finger[,] and feel items" is inconsistent with Dr. Jung's finding that Snead was "moderately limited" in using her hands. Likewise, the ALJ's conclusion that Snead could "occasionally climb stairs" is not consistent with Dr. Jung's assessment that Snead was "very limited" in that activity. And the ALJ's conclusion that Snead can "occasionally climb. . . ladders, ropes[,] or scaffolds" is even more suspect in light of the finding that she is "very limited" in pushing, pulling, bending, and climbing stairs. Someone "very limited" in those activities would likely be similarly—or more—limited in climbing ladders, ropes, and scaffolds.

4

The Commissioner observes that Dr. Jung indicated that Snead's limitations "would only last '7-11 months.'" Docket Item 13-1 at 16. Thus, the Commissioner contends, "Dr. Jung expressly admitted that the limitations in h[er] questionnaire were temporary and would not last at least 12 months." *Id.* at 17. But as Snead observes, "the Commissioner incorrectly assumes [that] Snead's condition started the same day as Dr. Jung's opinion." Docket Item 15 at 1. Indeed, it is not clear from Dr. Jung's opinion when the described functional limitations started, and Dr. Jung indicated that she had been treating Snead for more than six months. *See* Docket Item 5 at 451-52. So it may well be that in total, Snead's condition had lasted and would be expected to last a year or more.

What is more, *the ALJ* did not state that he discounted Dr. Jung's opinion because the functional limitations it described were only temporary. *See id.* at 28. The Commissioner's "*post hoc* rationalizations are not an appropriate substitute for an ALJ's duty to support his conclusions by reference to substantial evidence." *See Laware v. Colvin*, 290 F. Supp. 3d 182, 186 (W.D.N.Y. 2017). And to the extent that there was confusion about the duration of the functional limitations described in Dr. Jung's opinion, the ALJ was "under an affirmative obligation to develop [Snead]'s medical history." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). For example, the ALJ easily could have contacted Dr. Jung to inquire when those functional limitations began and whether—in total—they would be expected to last a year or more.

Finally, if the ALJ did not base his RFC on Dr. Jung's opinion because it dealt with "temporary" limitations, then the ALJ was left with no medical basis for his RFC. "Although the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is

5

not qualified to assess a claimant's RFC on the basis of bare medical findings." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) (quoting *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)); *see also Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that [the] plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data.").

Here, as Snead observes, the ALJ give "little weight" to the opinion of Franco Vigna, M.D., Snead's spine surgeon, and did not explicitly weigh the opinion of Abrar Siddiqui, M.D.—the only other two medical opinions regarding Snead's physical RFC. *See* Docket Item 6-1 at 19. This Court agrees with Snead that "[b]y rejecting Dr. Vigna's opinion[ ], ignoring Dr. Siddiqui's opinion, and misapplying Dr. Jung's opinion, the ALJ had no medical authority to substantiate his RFC." *Id.*; *cf. Thomas*, 2019 WL 2295400, at *2 (remanding where "[a]ll of the records in the case consist of clinical notes that have no medical source statements and no other assessments of plaintiff's exertional and non-exertional abilities," yet "the Commissioner crafted a very specific RFC that included references to ladders, ropes, and scaffolds").[3]

In light of the inconsistency between the ALJ's giving Dr. Jung's opinion "great weight" and the RFC determination, the Court remands this matter. On remand, the ALJ should reconsider Dr. Jung's opinion and Snead's RFC, and the ALJ should contact

---

[3] Snead does not argue that the ALJ erred in rejecting Dr. Vigna's opinion and ignoring Dr. Siddiqui's opinion.

6

Dr. Jung for clarification, if necessary. Likewise, if the ALJ does not factor Dr. Jung's opinion into his RFC evaluation due to the timeframe of the described limitations, he should solicit another medical opinion—from Dr. Jung or another medical provider—regarding Snead's functional capacity, including her limitations and their duration.[4]

## **CONCLUSION**

For the reasons stated above, Snead's motion for judgment on the pleadings, Docket Item 6, is GRANTED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 13, is DENIED. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     March 23, 2020
            Buffalo, New York

                                       *s/ Lawrence J. Vilardo*
                                       LAWRENCE J. VILARDO
                                       UNITED STATES DISTRICT JUDGE

---

[4] Snead also argues that the ALJ erred in failing to identify and resolve a conflict between the testimony of the VE and the DOT. *See* Docket Item 6-1 at 1. This Court "will not reach [this issue] because [it] may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").